## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **FREDERICK DOUGLAS DIXON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **VS.** | : | **NO. 5:24-cv-243-MTT-CHW** |
| | : | |
| **DEPUTY WARDEN BROWN,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## ORDER AND RECOMMENDATION

In accordance with the Court's previous orders and instructions, pro se Plaintiff Frederick Douglas Dixon, an inmate presently incarcerated at the Central State Prison in Macon, Georgia, has filed a motion for a preliminary injunction explaining why he has not paid his initial partial filing fee as ordered (ECF No. 8). After filing this motion, Plaintiff was able to submit his initial partial filing fee. Because Plaintiff's motion for a preliminary injunction requests that the Court order prison officials to deduct the initial partial filing fee from his prison account, the motion (ECF No. 8) is **DENIED as moot.**

Plaintiff's claims are now ripe for preliminary screening pursuant to 28 U.S.C. § 1915A and § 1915(e). Having conducted this screening, the Court finds that Plaintiff's excessive force claims against Defendants Harden, Chambers, Hamilton, and Brown and his supervisory liability claim against Defendant Brown should proceed for further factual development. It is **RECOMMENDED** that his remaining claims be **DISMISSED without prejudice.**

**PRELIMINARY SCREENING OF PLAINTIFF'S COMPLAINT**

## I.      Standard of Review

The Prison Litigation Reform Act ("PLRA") obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee.  *See* 28 U.S.C. § 1915A(a).  Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP.  Both statutes apply in this case, and the standard of review is the same.  When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).  *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Hughes*, 350 F.3d at 1160 (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam)).  Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. §1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

A claim is frivolous if it "lacks an arguable basis either in law or in fact."  *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless."  *Id.*  A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action."  *Twombly*, 550 U.S. at 555 (second alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1216 (3d ed. 2004)).  In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim.  *Id.* at 556.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.  *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).  If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal.  *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.    Factual Allegations

Plaintiff's claims arise from his treatment at the Central State Prison in Macon, Georgia on June 20, 2023.  Compl. 6, ECF No. 1.  Plaintiff contends that on that date, he requested protective custody from two deputy wardens, Brown and Chambers, and from the chief of security, Hamilton.  *Id.*  These Defendants denied his request, and Defendant

3

Brown directed CERT team sergeant Harden and two unidentified officers to "attack[]" Plaintiff. *Id.* This "attack" appears to have been due to Plaintiff's refusal to return to the dorm after Plaintiff's request for protective custody was denied. *See id.* at 4. Plaintiff contends Defendant Harden "slamm[ed Plaintiff] to the ground atop an antbed" and "dragg[ed Plaintiff] back to the dorm and thr[ew him] into the courtyard." *Id.* He further states Defendants Chambers, Brown, and Hamilton observed this use of force but failed to intervene. *See, e.g.,* Attach. 1 to Compl. 4, ECF No. 1-1. Plaintiff contends Defendants' actions and inaction violated his constitutional rights, and as a result he seeks declaratory and injunctive relief; compensatory, nominal, and punitive damages; and a jury trial. Compl. 7, ECF No. 1.

### III.    Plaintiff's Claims

#### A.  Deliberate Indifference to Safety Claims

Plaintiff first suggests that Defendants Hamilton, Brown, and Chambers were deliberately indifferent to his safety because they failed to grant his request for protective custody. Such claims are generally cognizable under the Eighth Amendment to the United States Constitution. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prisoner asserting this type of Eighth Amendment claim must allege (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).

Deliberate indifference has both a subjective and objective component. *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019). The subjective component of deliberate indifference requires that an "official must both be aware of facts from which the inference

4

could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference." *Id.* at 1234 (alteration in original) (quoting *Rodriguez v. Sec'y of Dep't of Corrs.*, 508 F.3d 611, 617 (11th Cir. 2007)). This standard also requires that the prison official have "more than a generalized awareness of risk" to the prisoner. *Id.* at 1234 (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101-02 (11th Cir. 2014)). A plaintiff can meet this standard by pleading facts showing "that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm" or by providing prison officials with details about a specific threat sufficient "to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Id.* at 1235-36 (quoting *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)); *see also Estate of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016) (per curiam) (identifying "the particularized risk claim" and "the dangerous conditions" claim as the two theories under which inmates may seek to advance an Eighth Amendment failure-to-protect claim). The objective component requires the prisoner to allege facts establishing that the prison official objectively "responded to the known risk in an unreasonable manner, in that he or she 'knew of ways to reduce the harm' but knowingly or recklessly declined to act." *Id.* at 1234-35 (quoting *Rodriguez*, 508 F.3d at 620).

Plaintiff first appears to allege liability on a "dangerous conditions" theory. To support this claim, Plaintiff states he requested protective custody because staff shortages at the prison "allow[ed] the intermingling of offenders/inmates and allow[ed] different groups with known hostilities toward each other to intermingle in order to instigate

violence." Compl. 10, ECF No. 1. Plaintiff has not alleged any specific facts that could show that Central State Prison was one "where violence and terror reign[ed]" and was thus so dangerous that Plaintiff faced a substantial risk of serious harm simply because he was housed there. *Marbury*, 936 F.3d at 1234 (quoting *Purcell ex rel. Estate of Morgan v. Toombs Cnty.*, 400 F3d 1313, 1320 (11th Cir. 2005)). He has therefore failed to state a claim on this theory.

Plaintiff also appears to base his claims on the "specific threat" theory. To this end, Plaintiff contends he submitted a witness statement form to Defendant Chambers in support of his protective custody request, explaining why he was in danger. Attach. 1 to Compl. 5, ECF No. 1-1. Plaintiff does not allege any facts about this statement that would allow the Court to assess, even preliminarily, whether prison officials should have concluded that the alleged threat presented a strong likelihood that Plaintiff would be injured and that prison officials failed to respond reasonably to that risk. This allegation is thus too vague and conclusory to state an actionable claim.

Plaintiff also appears to suggest that Defendant Chambers should have known of a particular risk posed by Defendant Harden because Defendant Harden "had a repetitious work history of assault on inmates." Attach. 1 to Compl. 5, ECF No. 1-1. Again, Plaintiff fails to provide any specific allegations about the nature or frequency of these alleged assaults that could suggest Defendant Chambers knew that Defendant Harden posed a significant threat to Plaintiff and failed to act reasonably on that knowledge. Absent such factual support, Plaintiff fails to state a claim upon which relief may be granted. Plaintiff's

6

allegations that Defendants were deliberately indifferent to his safety should therefore be dismissed without prejudice.

### B. Due Process Claims

Plaintiff also suggests Defendants violated his due process rights by failing to place him in protective custody. Attach. 1 to Compl. 7, ECF No. 1-1. The Due Process Clause of the Fourteenth Amendment protects against deprivations of "life, liberty, or property without the due process of law." U.S. Const. amend. XIV. In order to establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must generally show that a person acting under color of state law deprived him of a constitutionally protected liberty or property interest without constitutionally adequate process. *See, e.g., Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1236 (11th Cir. 2003) (per curiam). A prisoner does not have a constitutionally protected liberty interest in being placed in a particular prison or being given a particular custody classification, so long as the conditions of his confinement do not otherwise violate the Constitution. *See Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Mathews v. Moss*, 506 F. App'x 981, 983 (11th Cir. 2013) (per curiam). Because Plaintiff did not have a protected liberty interest in being assigned to protective custody, he cannot state a due process claim. All such claims he may have intended to assert are therefore subject to dismissal.[1]

---

[1] Though the denial of an inmate's request for protective custody does not itself violate his due process rights, such a denial could violate his right to protection from harm inflicted by other inmates or prison officials. This right derives from the Eighth Amendment, not the Fourteenth Amendment, and is addressed above.

C. <u>Retaliation Claims</u>

Plaintiff briefly mentions his belief that Defendants retaliated against him by attacking him after he filed a request for protective custody. *See, e.g.,* Attach. 1 to Compl. 14, ECF No. 1-1. To state a retaliation claim, an inmate generally needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). Even assuming Plaintiff has alleged facts sufficient to establish the first two elements of a retaliation claim, he has failed to show the requisite causal connection between his request for protective custody and Defendants' actions.

First, Plaintiff's assertion of retaliation is entirely conclusory. *Green v. Mowery*, 212 F. App'x 918, 920 (11th Cir. 2006) (per curiam) (inmate's "conclusory statement of retaliation," without more, was insufficient to establish violation of First Amendment). More importantly, Plaintiff acknowledges that Defendants "attacked" him because he refused to cooperate with prison officials' order to return to the dorm, not because he sought protective custody. Attach. 1 to Compl. 4, ECF No. 1-1. Absent specific facts sufficient to show that Defendants were motivated to harm Plaintiff because he requested protective custody, Plaintiff has failed to state an actionable retaliation claim. *Smith v. Fla. Dep't Corrs.*, 318 F. App'x 726, 728 (11th Cir. 2008) (per curiam) (holding that inmate failed to state retaliation claim where "the disciplinary order he challenge[d] was properly filed after [the inmate] disobeyed an order to cooperate with the transfer, and not because he had filed

8

lawsuits or administrative grievances"). All such claims Plaintiff intended to assert in this case should therefore be dismissed without prejudice.

### D. Excessive Force Claims

Plaintiff next contends that Defendant Harden used excessive force against him. The Eighth Amendment's prohibition against cruel and unusual punishment forbids the "unnecessary and wanton infliction of pain." *Moore v. Hunter*, 847 F. App'x 694, 697 (11th Cir. 2021) (per curiam) (quoting *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010)). "In the prison context, an excessive force claim 'requires a two-prong showing: an objective showing of a deprivation or injury that is sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities and a subjective showing that the official had a sufficiently culpable state of mind.'" *Id.* (quoting *Thomas*, 614 F.3d at 1304). The objective showing "is responsive to contemporary standards of decency," and thus even "a de minimis use of force is cognizable under the Eighth Amendment if it is 'repugnant to the conscience of mankind.'" *Moore*, 847 F. App'x at 697 (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (per curiam)). To show subjective intent, the prisoner must show that a prison official applied force to a prisoner "maliciously and sadistically to cause harm" rather than "in a good faith effort to maintain or restore discipline." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). To determine whether force was applied maliciously or sadistically, the court considers factors which include "(1) the need to apply force, (2) the relationship between that need and the amount of force applied, (3) the threat reasonably perceived by the

responsible officials; and (4) any efforts made to temper the severity of the forceful response." *Moore*, 847 F. App'x at 698. When prison officials maliciously and sadistically use force to cause harm, they will always violate contemporary standards of decency, even if no significant injury results. *Id.* In addition, "once the necessity for the application of force ceases, any continued use of harmful force . . . and any abuse directed at the prisoner after he terminates his resistance to authority" are considered Eighth Amendment violations. *Williams v. Burton*, 943 F.2d 1572, 1573 (11th Cir. 1991).

Taking Plaintiff's allegations as true and viewing them in the light most favorable to him, as the Court must at this early stage, Plaintiff alleges that Defendant Harden "attack[ed]" him after Plaintiff made a request for protective custody. Attach. 1 to Compl. 4, ECF No. 1-1. Plaintiff further states that he "lay on the ground" and did nothing to escalate the situation before and during the alleged attack. *Id.* He also repeatedly describes this incident as a "beating," suggesting that Defendant Harden intentionally threw him on the ant bed and stating that he received unspecified injuries to his arms, leg, and back. *Id.* at 6, 9, 13. Plaintiff acknowledges that he "refuse[d] to return to the unsafe environment," presumably meaning his dorm. *Id.* at 9. If Plaintiff was refusing a lawful order from prison officials, prison officials may have been entitled to use some amount of force against him. *See, e.g., Sconiers v. Lockhart*, 946 F.3d 1256, 1264 (11th Cir. 2020) (holding that "correctional officers in a prison setting can use pepper-spray or a takedown to subdue an inmate as long as a valid penological reason supports the use of such force"); *Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008) (noting that application of two short bursts of pepper spray to inmate who refused orders to return to his cell did not constitute excessive

force), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). Without further factual development, the Court cannot say that Plaintiff's excessive force claims against Defendant Harden are necessarily frivolous. As such, those claims shall proceed for further factual development.

Plaintiff also contends that Defendants Hamilton, Chambers, and Brown watched as Defendant Harden used excessive force against Plaintiff and did nothing to stop him. Compl. 4, ECF No. 1. The Eleventh Circuit has held,

> It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.

*Skrtich*, 280 F.3d at 1302 (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985)). Because Plaintiff has sufficiently alleged—for screening purposes only—that Defendant Harden used excessive force against him and Defendants Hamilton, Chambers, and Brown did nothing to intervene, these claims must also proceed for further factual development.

E. Supervisory Liability Claims

Plaintiff suggests that Defendants Brown and Chambers should be held responsible for the conduct of Defendant Harden. *See, e.g.,* Attach. 1 to Compl. 9, ECF No. 1-1. "A supervisor may be liable for the unconstitutional acts of his subordinates when he personally participates in those acts or when a causal connection exists between his actions and the constitutional deprivation." *Christmas v. Nabors*, 76 F.4th 1320, 1330 (11th Cir. 2023). A causal connection can be established if

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1298 (11th Cir. 2023) (quoting *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007)).  The standard by which a supervisor may be held liable for the conduct of his or her subordinates is "extremely rigorous."  *Id.*

Plaintiff contends Defendant Brown "gave the command for the C.E.R.T. security officials to attack Plaintiff Dixon."  Attach. 1 to Compl. 8, ECF No. 1.  This allegation is sufficient to permit Plaintiff's supervisory liability claim against Defendant Brown to proceed for further factual development.

The basis for Plaintiff's supervisory claims against Defendant Chambers is less clear.  Plaintiff has not described a history of similar incidents or alleged any facts suggesting Defendant Chambers directed anyone else to act unlawfully or knew they would do so and failed to stop them.  *See Piazza v. Jefferson Cnty.*, 923 F.3d 947, 958 (11th Cir. 2019) (prisoner failed to state supervisory liability claim where he failed to "point to other instances" of unconstitutional conduct).  Instead, it appears he is contending that Defendant Chambers "fail[ed] to follow the administration segregation policy" and thereby "mismanage[d] . . . her subordinates."  Attach. 1 to Compl. 7, ECF No. 1-1.  The "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence."  *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th

12

Cir. 2000).[2]  Plaintiff's allegation that Defendant Chambers failed to follow policy, standing alone, is insufficient to state a supervisory liability claim against Defendant Chambers, and all such claims should be dismissed without prejudice.

F. Equal Protection Claims

Plaintiff mentions that he "has a[n] equal protection argument because Plaintiff Dixon was treated differently than other inmate(s) by being denied administrative segregation housing when other inmate(s) receive segregation housing."  Attach. 1 to Compl. 7, ECF No. 1-1.  The Equal Protection Clause of the Fourteenth Amendment provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  "The Equal Protection clause is 'essentially a direction that all persons similarly situated should be treated alike.'"  *Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1226 (11th Cir. 2023) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  When there is no direct evidence of discrimination, a plaintiff must generally allege that similarly situated persons—or "comparators"—have been treated differently through state action to state an equal protection claim.  *Williams v. Sec'y for Dep't of Corrs.*, 131 F. App'x 682, 685-86 (11th Cir. 2005) (per curiam); *see also Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006).

---

[2] To the extent that Plaintiff is alleging Defendant Brown also failed to follow Georgia Department of Corrections procedures for assigning inmates to administrative segregation, *see, e.g.,* Attach. 1 to Compl. 6-8, ECF No. 1-1, he has failed to state a claim for the same reason.

In this case, the Complaint does not set forth any direct evidence of discrimination. *See, e.g., Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021) (noting that direct evidence of discrimination would generally require "the overt invocation" of discriminatory language, such as "the use of a racial slur or racially charged language"). Nor has Plaintiff alleged that any other specific similarly situated person was treated differently than he was. Plaintiff has therefore failed to state an actionable equal protection claim. *See, e.g., Williams*, 131 F. App'x at 687 (affirming dismissal of equal protection claims where plaintiff "failed to allege facts showing that any other specific inmate" had been treated differently than plaintiff). Any such claims should be dismissed without prejudice.

### G. Claims against the Georgia Department of Corrections

Finally, Plaintiff names the Georgia Department of Corrections as a Defendant in this lawsuit. The Georgia Department of Corrections is a state entity entitled to Eleventh Amendment immunity. *See Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) ("The Eleventh Amendment bars [the plaintiff's § 1983] action against the Georgia Department of Corrections . . . . This Eleventh Amendment bar applies regardless of whether the plaintiff seeks money damages or prospective injunctive relief."); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) (states and governmental entities that are considered "arms of the state" are not considered "persons" capable of being sued under § 1983). Plaintiff's claims against the Department of Corrections are therefore also subject to dismissal.

### III.    Conclusion

For the foregoing reasons, Plaintiff's excessive force claims against Defendants Harden, Chambers, Hamilton, and Brown and his supervisory liability claim against Defendant Brown should proceed for further factual development.    It is **RECOMMENDED** that his remaining claims be **DISMISSED without prejudice.** Plaintiff's motion for preliminary injunctive relief (ECF No. 8) is **DENIED as moot.**

### OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.  Any objection is limited in length to **TWENTY (20) PAGES**.  *See* M.D. Ga. L.R. 7.4.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.  Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

### ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Harden, Chambers, Hamilton, and Brown, it is accordingly **ORDERED** that service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.  Defendants are reminded of the duty to avoid unnecessary service

15

expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. All Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party

and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a

trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 17th day of December, 2024.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge

18